18-506-86 Communication Workers of America v. Southwestern Bell Mr. Holder, whenever you're ready. Good morning, your honors. May it please the court. Matt Holder for Appellants Communications Workers of America, AFL-CIO. This case concerns two overlapping issues. The jurisdiction of an arbitrator and when an arbitrator's decision manifests infidelity to the contract he is called upon to interpret by rendering a decision that completely ignores the pertinent language. The party's collective bargaining agreement contains an arbitration provision that states arbitration is final and binding. It also includes a provision that incorporates the rules of the American Arbitration Association for labor arbitration into the contract. In pertinent part, Rule 40 states that an award can be corrected for technical error, computational error, and so forth, but such a correction cannot result in the redetermination of a previously resolved claim. I'm not exactly what it says. It doesn't say, the second sentence, doesn't it say you can't have a redetermination of the merits? Isn't that what Rule 40 said? I didn't mean to interrupt you, but I just thought that that was an important language in the technical error versus a merits redetermination. So clerical, typographical, technical, or computational errors in an award, but in doing so cannot redetermine the merits of any claim already decided. So with that said, the facts giving rise to this case are that the Communication Workers of America filed a grievance concerning the assignment of splicing work to a job title called premises technician. The premises technician are a technical title that go out to literally a customer's premise and install telecommunications equipment, such as high-speed internet, TV over internet product. Is this factual recitation necessary to the issue before this court? No, I'm just giving you background, Your Honor. We have plenty of background. We've been doing nothing but background for weeks. Thank you, Your Honor. I'll move on. This is, to me, the issue. Do you have a case where a court has ever vacated an arbitrator's award when the arbitrator cited Rule 40 and said, I'm correcting a technical clerical error? Has a court ever said, that's not even arguably justified? What's the case? Well, I think that the cases are that – well, looking first at the IBEW case. Do you know of a case where a court has ever vacated an award where the arbitrator said, I'm using my authority under Rule 40 to correct it? And then they classify it as clerical or technical. Has a court ever vacated that award? The closest would be the Lindland case from the Seventh Circuit in 2000 concerning the dispute between wrestlers as to who gets to be on the U.S. Olympic team. And in that case, the arbitrator was dealing with commercial arbitration rules, the AAA, and Rule 48 there is the analog. And the court, in an opinion by Judge Easterbrook, said he's not applying Rule 48 here. He's just ignoring it because the second arbitrator vacated the first arbitration decision, which would have sent a different – But did the second arbitrator – did he invoke Rule 48? Yes, it's my understanding he did because in the decision by Judge Easterbrook, he says that he did not interpret or apply Rule 48. He ignored it. Right. That doesn't sound like you're invoking it if you ignore it. Well, I think that Judge Easterbrook was taking issue with the way he characterized what he did. And I think that that would be consistent with what happened here. He looked at Rule 40, but you can't reconcile what happened in the decision with what he did because he clearly redetermined the merits of the first decision. Well, their answer is the one you know, which is no. The first decision in January specifically said, but for Exhibit 4, they win. And then light bulb goes off. Exhibit 4 is shown to be inept altogether. So he's consistent with his merit analysis. Outcome changes, but merit analysis is identical. It was just a really obvious mistake. Call it clerical or technical, but that's at least arguable to say. No? And I understand. There's some reasoning. Yeah, and that's plausible reasoning, but – Wait, are you agreeing with Judge Higginson that it's plausible reasoning? Well, I was going to elaborate on my position, Your Honor. The reason that it's not possible for that to apply here is that the arbitrator's jurisdiction in his authority is limited to what the contract says. And he can't, in trying to do one thing, violate the provision that says he cannot redetermine the merits of the claim. And that's the slippery slope here is that for 60 years the courts have been warning against the problem of arbitrators coming in and dispensing their own brand of industrial justice. And when an arbitrator looks at something and says, I made a mistake, but the contract has a prohibition on him doing what he then does in the very next step, that's the problem. He doesn't have just general powers like a state court judge would have to resolve an issue. He's limited to what the contract invests in him to do, which is resolve an issue under the terms set forth in the contract. Well, I guess the key question for me is why he – the arbitrator characterized what he did as correcting a technical error. I have – I'll tell you. I have a lot of sympathy for the argument that that's wrong. It wasn't a technical error. However, he characterized it that way. So tell me why it's not even colorable, it's not even arguable that that's correcting a technical error. Because such corrections cannot then lead to the redeterminations of a previously resolved claim. And I think that the whole of Rule 40 has got to be read together, that you cannot just say I'm fixing a technical error but then ignore the part at the end, as in the Lindland case, where it says you cannot redetermine the merits of a previously resolved claim. Well, could a technical – could correction of a technical error result in a different amount of an arbitration award? Yes, I think so, because it talks about computational errors. And there are some of the cases that the district court relied on that are requests for clarification that perhaps resulted in recomputations. So, for example, in the rain to carbon case, there was a problem created by the inclusion of some language in there, and that led to the party seeking a clarification. And then you have the AP seating case where, again, there was a stray statement stating that the party that had apparently lost still had a 53% interest in the seats that had been built. I guess what I was hoping that you'd get at – that you'd get to is this particular exhibit. What was it for? Yes. Exhibit four. The arbitrator said, gosh, I misunderstood. I'm paraphrasing. The arbitrator said, I misunderstood who that exhibit was referring to. I guess he thought it was referring to Southwestern Bell, and it wasn't. And he said, just a total mistake on my part. Sorry. Why isn't that a technical error? He just misunderstood the import of the exhibit. Well, to me, it's not a technical error because I think that technical errors go to things like computational or things like basis of damages and things like that. If you look at Rule 60 of the Federal Rules of Civil Procedure, it talks about just a general mistake. That seems more pertinent to what's occurring here, that there was just a mistake. And, again, I would also go back to the thing that you can't take away the types of errors that can be created from the limitation that they cannot lead to a redetermination of the merits. So to go to your earlier point, Your Honor, that if there is a computational error in the award about – that leads to – that was incorrect, say the basis for back pay had been the incorrect assumption of previous wages. That could be corrected because you could say, Your Honor, Mr. Arbitrator, that he made $20 an hour versus the $18 you cited in your award. That would be a technical error and the type of computational error that Rule 40 was designed to address. I don't think that Rule 40 stands as a general means by which a party can go back and ask an arbitrator to just reconsider. Well, that's certainly true, but let me ask it this way. I know you're not here to defend the arbitrator's initial decision, which was in favor of your client, right? But explain to me the rationale, if you can, for why Exhibit 4 does support ruling for the union. Well, the union introduced it to show a pattern of practice that in the Midwest what had happened is they made an explicit statement that one type of splicing, fusion splicing, would be reserved for higher paid craft titles. By implication, that meant that mechanical splicing had been released, and that could be assigned to the lower paying technician titles. Here, there was never any such agreement that showed anything about waiving splicing or mechanical, and our point was that both things are reserved for any type of splicing, period. Both types, mechanical and fusion, are reserved for work by the higher paid classifications. Okay, so that's your argument about why Exhibit 4 would support the union. How would you characterize the change in position of the arbitrator, such that it's not a technical error? What the arbitrator did was he mistook that Exhibit 4 actually was a summary of dealings between Southwestern Bell and CWA, when in fact it was a recitation of the negotiations between District 4 of CWA and the Midwest Bell spinoff that operates in the Ohio area. And I forget the name of that regional bell operating company, but he assumed when writing the award that it was on point rather than offered as persuasion as to... He would never do that, of course, but that doesn't sound like a technical error. That sounds like an error in judgment about the... Is that what you're saying? Well, what your honor's describing would be something that, where you're dealing with the opinion issued by a judge, and you could move to reconsider under the federal rules of appellate seizure. You could move for an en banc reconsideration. You could take it to the Supreme Court. There are rules set forward as to how you could deal with that situation. Here, the only rule that allows an arbitrator to revisit an award... No, no, no, I understand that. I'm just trying to characterize the use of Exhibit 4 in the arbitrator's decision. I was trying to analogize it, if it's possible, to a judge using a precedent. I don't know. Maybe that's the wrong analogy. I would think that it would be analogous, maybe more so, to fact construction, which you really can't review on appeal, because it wasn't a case that was being cited, but was a document about, here's what you have going on somewhere else, where they came out and said, we're holding on to fusion splicing, period. And we were saying, we've never done that, so we think all of the splicing is for the higher pay technical titles. I assume you agree that our standard of review here is extremely lenient with respect to an arbitrator's decision. Yes. Again, it's a very limited review, and it is limited to cases where the arbitrator has manifested an infidelity to the contract by failing to have his award draw the essence from it. And one case I would point you to recently from the Fifth Circuit is the Southwest Airlines versus Transportation Workers case from 2019, where an arbitrator was faced with a contract that permitted him to entertain a grievance, so long as it was filed within 10 days of the contract becoming effective. He used 10 days within the signatory date, which was not within 10 days of the ratification, which is when the contract became effective. And the Fifth Circuit said, here you misread the contract, and therefore you are going outside your bounds. That's a little different, right? That's the contract with a specific point. Here the contract embraced the AAA rules. The rules say, Rule 47, you get to interpret the scope of your authority under this. Then he interprets Rule 40 to be expansive. We may all think that's wrong. It's not like a district court doing a clerical correction at sentencing under our law, but it's arguable. And again, that goes to my point that those corrections cannot result in the redetermination of previously resolved claim. Yes, Your Honor. Okay. And again, I think that the Southwest Airlines case is very instructive about that. Even though there is a great deal of deference accorded to arbitration decisions, it's not a blank check. As the court said in Ablemar, arbitrators don't wield unlimited power. They wield the power given to them by the contract. And the best way to resolve this situation going forward for the parties would be to include a procedure whereby there can be factual reconsideration submitted to the arbitrator. So that that way you can have the merits of this type of situation addressed without having to do violence to the language of the contract. Because the slippery slope, again, is the notion that arbitrators will apply their own brand of industrial justice. That instead of looking at the terms of the contract and applying the contract, they will just do what they think they should do. And in many cases like that, the Fifth Circuit has reversed them, the Delta Queen decision from 1989 being one of the most prominent examples of that. Because in that case, an arbitrator found that a grievant was careless, but in fact was grossly careless. But he still reinstated him, despite the fact that the contract said there is cause for termination or discipline when you are grossly negligent or careless. And in that situation, when the arbitrator manifested infidelity of the contract, the Fifth Circuit vacated the decision. All right, reserve time. Mr. Counsel. May it please the court. Good morning, your honors. Good morning. Judicial staff. Mr. Holder. My name is Chris Bourgeois, and I represent the Appley Employer Southwestern Bell et al. For brevity's sake, let's just refer to them as the company. I would submit, Judge Duncan, I'd go further on the scope of review and the standard of review before this court. I would submit that it's not just extremely limited, it's extraordinarily limited. Whenever I advise my clients if they want to take an adverse decision up to the court, I give them the usual, you've got two chances, slim and I'll say almost none, but it's about 99% none. This case is nothing different. I know there are plenty of decisions that say that. If we affirm this award, when would an arbitrator ever violate the provision that prohibits redetermination of the merits, as long as the arbitrator says I'm characterizing what I'm doing as correcting a technical error? I think it goes beyond just the utterances of the arbitrator. I think you can divine from this court and from Judge Sparks' court in the AP seating case, is there an absence of a credible or honest belief that there's been an error? And there clearly wasn't that here. There was no reason to dispute the arbitrator's credible and honest belief that he made an error, a technical error. It could have been a clerical error. It could have been one of those errors listed in Rule 40, but here's the key. I think this goes to a… It's arguable. I believe so. Those are the three elements of your limiting principle. I think that fits. Does that accept the 11th Circuit IBEW case and then Judge Easterbrook's case? Those two harmonize? I can harmonize that really easily here because I just found something last night. I had this epiphany reading the Verizon case, the principal case that the union relies on. In that case, the Court of Appeals said this is what the union did. That is not redetermining the merits. I'm quoting from page 1249 of that decision. The court there said the union's request was narrowly framed. Notably, it did not challenge the arbitrator's reasoning or his substantive analysis in any way. It merely inquired about the application of that reasoning and analysis to the factual record. That's exactly what the company did here. It pointed out to the arbitrator, hey, on the factual record you said, but for the past practice of Union Exhibit 4 of these parties, I would have found no violation of the contract. So is that the technical aspect of the error that he thought initially Exhibit 4 referred to these parties, and in fact it did not? Yes. That is the nub of the error. Again, this court in rain, and again Judge Sparks later, said that the union, for example, in this case, has the burden to show that that interpretation of his error was not genuine or credible. There's no proof in this case. The other issue, though, I would bring up is Rule 47 of the AAA rules, which are part of the parties' agreement, gives that authority to interpret Rule 40 to the arbitrator. And interestingly, Rule 40 does not define what an error is, nor does it define what redetermining the merits is. So that is an interpretation that the parties agreed for the arbitrator to make, and that arbitrator made that determination. And under court's rulings, we have sort of a double deference here. One, the AAA rules are incorporated and part of the parties' agreement. The interpretation of an arbitrator of that agreement is entitled to deference. But so is the interpretation of the AAA rules. So there's a double deference standard, I would argue, that exists here. And I've cited rain, AP seating, and more significantly, albeit a district court decision, the Eggleston case gives a wonderful, elegant review of the standard of review for procedural issues of AAA rules. Citing a Supreme Court decision that says— Did the arbitrator there invoke the rule or not? I don't think he did exactly. He may have mentioned it just like the Verizon court in Florida that the union relies on. There was a passing reference to 40, but that court never really examined Rule 40 and made a decision about it. So in your view, the Verizon case you're talking about is the IBEW case? Correct. If the arbitrator had said, look, I'm going to change my decision and then characterize it as a technical correction under Rule 40, in your view, that decision, should it still come out the same way? He exceeded his powers, or should it not? Well, I actually don't have as big a problem with the result in Verizon  We may have been a little loosey-goosey with arguing the theories of the case. That's light years different from what happened here. The company did not re-argue the case, did not bring in new evidence, did not throw in new theories. I thought it was accepted that there the arbitrator thought that its authority to reconsider came from a Florida statute, which in fact applies to courts only. Well, that was another distinction, I think, was the arbitrator there did invoke the Florida statute on reviewing arbitrations. So they didn't invoke Rule 40. Well, they didn't invoke Rule 40, or the analog in that case. So, really, on that principle point, I think, again, we have to apply everything the court does in reviewing an arbitration is laced with deference. Reviewing the arbitrator's authority, his powers, you look at it deferentially. Applying the essence test. I'm not sure that I talked about that. It wasn't just the arbitrator that missed it. I assume your client missed it at the time that it was presented. Oh, I objected like heck. Oh, you did? In the record, yes. And the union's wound here is somewhat self-inflicted because nowhere in its post-hearing brief did the union ever elaborate why it was putting Union Exhibit 4 in the record in the first place. I kept arguing to the arbitrator, this is a different company, a different bargaining unit, a different contract, different bargaining history. As arbitrators want to do, I'll let it in for what it's worth. And apparently it was worth a lot initially, but to his credit, he corrected his error in that regard. Okay. And when we look at the record, we'll find that your objections to Exhibit 4 are in the nature of a technical objection. Meaning, look, you've just got the wrong parties here. Right. Well, if that's how the arbitrator wants to define technical in ruling on an evidentiary matter, I suppose. But I did make objection on the relevancy. And again, it goes to the ultimate decision in the first award that but for my misunderstanding, my error, the company would win. I see. I've got a little more time, and I have to raise this issue. And for the reasons I've already said, I do think that the second award draws its essence from the contract. There's no question at page 2 of his award. Let me go back. Page 1 of the award, the second award, the arbitrator gets into addressing the union's argument over Rule 40. So he's interpreting Rule 40. He says, I'm not doing any violence to it. It's not violated. And, in fact, I'm duly obliged to correct this error. Good for him. That's a very intellectually honest decision. Second page of the award, he gets into the merits of correcting that award. And he quotes the party's CBA, the contract, line in verse. I mean, he says that the agreement was modified and based upon to give Premtex all work at issue here and based upon my misunderstandings, I find no violation. That's quintessential drawing essence from the contract. The company should win on that basis alone. But, and for the law students behind me, I would recommend that you always have an even-if argument. And I would submit in this case, even if this court were to overrule its decades-long application of deference, of extraordinary deference to this case. Well, of course, for the benefit of the law students, we couldn't do that even if we won because we're just a panel. But even if that should happen, I think, as my opposing counsel pointed out, there is that very, very limited train of thought precedent in this court and other circuits that if the arbitrator ignores the express language of the party's contract, then there is no drawing essence of the contract in the award. And so if I submit if the second award is set aside for whatever reason, so goes the first award. Because you look at the operative language in this case, the company and the union bargaining good faith, and the company paid about three and a half an hour every hour of the week to Premtex, regardless if they're doing the splicing work, for language that said the company can assign all work at the serving terminal. I don't find much ambiguity, if any ambiguity in that. And so since the arbitrator properly, I would argue, corrected his first award, we don't need to address that. But if we have to, even if the second award gets vacated, I think the court would be on firm ground under the decisions like Delta Queen, as opposing counsel mentioned, more recently BS&F Railway, and the Beard case that the first award would not draw its essence from the party CBA because it clearly ignores the plain and express language of the operative language. And with that, I have nothing further to say, and I'm open to any questions by the court. The case is submitted. Thank you, counsel. Thank you, Your Honor. Roboto? Yes. And just for the benefit of the court, the discussion of Exhibit 4 in the record transcript from the arbitration hearing is found on pages 179 to 83 of the record on appeal. And even the document itself, which is record 686 to 687, Exhibit 4, clarifies on there that it is from the Midwest Bargaining Unit. As to the application of the section of the Verizon case that opposing counsel mentioned earlier, that it is consistent with the original reasoning, again, the problem therein lies that it still, though, led to the prohibited redetermination of the merits, that it might be consistent with the initial reasoning, but it still led to what such a correction cannot do. And that is the problem here, is that you can make any type of technical or computational correction under Rule 40. However, you cannot make one that results in a redetermination of the merits of a previously resolved claim. And that is where the arbitrator ran afoul of Rule 40. You can't just focus on one part of it while not focusing on the other part, the limitation of it. That if all it said was an arbitrator can make technical or computational corrections, clerical corrections, then what the arbitrator did in this case would be appropriate. But there's the limitation at the end that says these cannot result in a redetermination of the merits of a previously resolved claim. And as to the company's theory that the second award is consistent with the language of the contract, the flaw in that theory is that that would hold true had that been the arbitrator's original reasoning, but it was not. The other evidence relied on by the arbitrator showed that the language that the company talked about about the ability to assign any work was bargained in 2009, and it wasn't until years later that the splicing work in question began to be assigned to them, and then just the mechanical splicing portion of it. The job title for the premise technician does not mention anything about splicing, and normally when there have been changes negotiated to that job title, the job description has been amended to reflect those changes. That did not occur here. The only titles that state this title splices cable are the customer service technician and the cable splicing technician titles. And those are not the technicians to whom this work was assigned which led to the filing of the grievance. And with that said, I yield to any questions. Thank you, counsel. That concludes our cases for the day.